<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MATTHEW J. PLATKIN, Attorney General of the State of New Jersey, and ELIZABETH HARRIS, Acting Director of the New Jersey Division of Consumer Affairs, | : : : : : : | Civil Action No. 25-5130 (JKS)(MAH) |
| Plaintiffs, | : : : | |
| v. | : : | REPORT AND RECOMMENDATION |
| DISCORD INC., | : : | |
| Defendant. | : : | |

## I.    INTRODUCTION

This matter is presently before the Court on the motion of Plaintiffs, Matthew J. Platkin and Elizabeth Harris, to remand this action to the Superior Court of New Jersey, Chancery Division, Essex County.  *See* Pls.'  Mot. to Remand, D.E. 19.  The District Court referred this matter to the Undersigned to issue a Report and Recommendation.[1]  The Undersigned has considered the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth herein, the Undersigned concludes that Discord has not carried its burden of establishing federal jurisdiction, and respectfully recommends that the District Court grant Plaintiffs' motion to remand this matter to the Superior Court of New Jersey, Chancery Division,

---

[1]  A decision to remand is dispositive.  *In re U.S. Healthcare,* 159 F. 3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court.").  Accordingly, the Undersigned addresses Plaintiffs' motion via Report and Recommendation.

Essex County.  *See Burrell v. Bayer Corp.*, 918 F.3d 372, 384 (4th Cir. 2019) (the removing party "bears the burden of establishing jurisdiction, especially given the significant federalism implications of removing a state-law action from state court"); *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (removing party bears burden of establishing federal jurisdiction).  The Undersigned also respectfully recommends that the District Court deny Plaintiffs' request for attorney's fees.

## II.    BACKGROUND

On April 17, 2025, Plaintiffs Matthew J. Platkin, Attorney General of the State of New Jersey, and Elizabeth Harris, Director of the New Jersey Division of Consumer Affairs[2] ("Plaintiffs") filed a four-count civil Complaint in the Superior Court of New Jersey, Chancery Division, Essex County, against Discord, Inc. ("Discord").  The Complaint alleges violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 et seq.  *See* Not. of Removal, Ex. A, Compl., D.E. 1-1, ¶ 7.[3]

---

[2]  The parties reference Elizabeth Harris as the acting Director of the New Jersey Division of Consumer Affairs, but the docket contains no formal substitution for the former Director of the New Jersey Division of Consumer Affairs.  That distinction does not affect the result of the motion to remand.

[3]  On September 2, 2025, Plaintiffs filed an Amended Complaint.  D.E. 34, 36.  The Amended Complaint does not affect the analysis of Plaintiffs' motion.  As explained below, Discord predicates removal on Count IV of the Complaint, which alleges a violation of the NJCFA based on a violation of the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6502(a)(1).  *See* Not. of Removal, D.E. 1., at ¶¶ 6-7.  Count IV of the Amended Complaint similarly pleads a violation of the NJCFA based on a violation of COPPA.  *See* Amended Compl., Sept. 2, 2025, D.E. 36, at ¶ 150 ("In the operation of Discord's business, Defendant has violated COPPA and thereby engaged in a presumptively unlawful commercial practice in violation of the CFA.").  Because the Amended Complaint does not alter the analysis of the motion to remand, and the parties refer to the original Complaint in their briefing, this Report and Recommendation also refers to the original Complaint for the sake of consistency.

Plaintiffs allege that Discord engaged in deceptive, unconscionable, and abusive commercial practices in violation of the NJCFA. *Id.* Count I alleges that Discord violated the NJCFA because it knowingly misrepresented the safety of its platform by falsely promoting it as safe for children. Discord purportedly misrepresented the effectiveness of the "Keep Me Safe" feature in detecting and removing explicit content, and claimed to restrict access to users under thirteen years old, despite relying solely on unverifiable self-reported birthdates. *Id.* ¶ 100. In Count II, Plaintiffs allege that Discord violated the NJCFA by failing to disclose, *inter alia*, its inability to safeguard children who use the platform, and the dangers those children face when using it. *Id.* ¶ 104. In Count III, Plaintiffs assert that Discord violated the NJCFA through unconscionable and abusive commercial practices, specifically employing deceptive practices to create a false sense of security. *Id.* ¶¶ 106-111. Those alleged practices include overstating the capabilities of its media scanning technology, inadequately enforcing safety policies, and designing a platform that exposed children to harm. *Id.* ¶ 108. Plaintiffs further contend that Discord collected personally identifying information ("PII") from underage users without obtaining verifiable parental consent, in direct violation of Discord's stated policies and legal obligations. *Id.* ¶¶ 5, 16, 23, 27, 61-68.

Count IV is most pertinent to the instant motion. This claim alleges that Discord, by violating the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6502(a)(1), violated the NJCFA.[4] *Id.* ¶ 118 ("In the operation of Discord's business, Defendant has violated COPPA and thereby engaged in a presumptively valid unlawful commercial practice in violation

---

[4] The NJCFA includes a "borrowing" provision that states "[i]n an action brought by the Attorney General, any commercial practice that violates State or federal law is conclusively presumed to be an unlawful practice under section 2 of [N.J.S.A. 56:8-2]." N.J.S.A. 56:8-4(b).

of the CFA, N.J.S.A. 56:8-2 and -4."). Plaintiffs maintain that § 6502(a)(1) of COPPA prohibits platforms such as Discord from collecting personal information from children under thirteen years of age without verifiable parental consent[5] if: (1) the online platform's operator actually knows that it is collecting a child's personal information; or (2) the online platform is directed at children. *Id.* ¶ 114 (citing 15 U.S.C. § 6502(a)(1)). Plaintiffs maintain that § 6502(a)(1) required Discord to obtain verifiable parental consent because Discord had actual knowledge that its users included children under thirteen years of age, and that Discord targeted those children for its platform. *Id.* ¶ 115. However, Plaintiffs claim that Discord did not obtain verifiable parental consent, and instead relied on "nominal bans" of children under thirteen years old, even as Discord collected their personal information. *Id.* ¶ 117.

Discord removed this case from the Superior Court of New Jersey on May 22, 2025. Discord predicates removal on the basis that Plaintiffs' COPPA claim raises a substantial federal question. *See* Not. of Removal, D.E. 1; *see also Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). Plaintiffs moved to remand the action to state court on June 9, 2025. Mot. to Remand, D.E. 19. Plaintiffs contend that federal jurisdiction does not exist

---

[5] Section 6501(9) defines "verified parental consent" as follows:

The term 'verifiable parental consent' means any reasonable effort (taking into consideration available technology), including a request for authorization for future collection, use, and disclosure described in the notice, to ensure that a parent of a child receives notice of the operator's personal information collection, use, and disclosure practices, and authorizes the collection, use, and disclosure, as applicable, of personal information and the subsequent use of that information before that information is collected from that child.

15 U.S.C. § 6501(9).

because Discord fails to satisfy the third and fourth prongs of the *Grable* test. *See generally* Memo. in Supp., D.E. 19-2.

## III.    DISCUSSION

Plaintiffs argue that the matter should be remanded because Discord has not asserted any cause of action raising a substantial question of federal law that would warrant resolution in federal court. *See generally* Memo. in Supp., D.E. 19-2, at 5. Plaintiffs also contend that entertaining this action in this Court would upset the federal-state balance, which is one of the considerations under the *Grable* test. *Id.* Plaintiffs argue that this action falls within the rule that a plaintiff who alleges state law claims alone is ensured a state forum, and does not fall within *Grable*'s specialized category of exceptions. *Id.* Plaintiffs further seek counsel fees and costs, arguing that Defendant lacked an objectively reasonable basis for seeking removal. *Id.* at 2.

Discord contends that Plaintiffs' COPPA claim is based entirely on an alleged violation of federal law, and that adjudicating that claim requires interpreting federal law. *See generally* Br. in Opp., D.E. 26. Thus, Defendant argues that this case properly belongs in federal court in accordance with *Grable*. *Id.* Defendant also asserts that this Court should deny Plaintiffs' request for attorney's fees and costs because its decision to remove the case to federal court was both legally correct and objectively reasonable. *Id.* at 14-15.

### A. Remand

District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Discord removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(a). Not. of Removal, D.E. 1, at ¶¶ 5-7 (asserting that Count IV "aris[es] under the Constitution, laws, or treaties of the United States") (brackets in original). Discord contends that Count IV presents a federal question,

specifically whether Discord violated COPPA. *Id.* at ¶ 7.  "The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded Complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "It is not enough that a federal question is or may be raised as a defense . . . the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *T.M. Russo, L.P. v. Lanuto*, No. 12-4169, 2012 WL 4506078, at *2 (D.N.J. Aug. 20, 2012) (quoting *United States Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002)).  The core question is "whether the state law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Collins v. Stevens Inst. of Techn.*, No. 15-4393, 2015 WL 10384507, at *1-2 (D.N.J. Dec. 2, 2015) (citing *Grable,* 545 U.S. at 308; *Abels*, 770 F.2d at 29; 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3739).

If a complaint generally pleads only state-law causes of action, the Supreme Court has instructed that the well-pleaded complaint rule typically does not permit the exercise of federal jurisdiction, even if those claims present issues of federal law.  *Id.  See also Merrell Dow Pharma. v. Thompson,* 478 U.S. 804, 808 (1986) (holding that violation of federal statute as element of state-law claim did not plead claim arising under federal law, where Congress did not provide a private, federal cause of action); *Hirschbach*, 496 F. Supp.2d at 455 ("Typically, federal question jurisdiction will lie only if the complaint pleads a federal cause of action.").

In *Grable*, the United States Supreme Court set forth a four-prong test to determine when federal question jurisdiction will lie over a state law claim.  The federal issue must be: (1)

necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable,* 545 U.S. at 313-14; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) (applying *Grable*).  It is undisputed that the federal issue in this case—*i.e.*, whether Discord violated the NJCFA by violating COPPA--is both necessarily raised and actually disputed.[6]  However, as discussed below, Discord's attempt to invoke federal jurisdiction fails the third and fourth prongs of the *Grable* test.

### 1.  Discord Has Failed to Meet its Burden to Demonstrate that the Resolution of This Case Depends on a Substantial Question of Federal Law.

The third prong of the *Grable* test requires the federal issue to be substantial.  Discord contends that Count IV necessarily depends on the resolution of a substantial federal issue and therefore "arises under" federal law.  *Id*.  Discord argues that the conduct underlying Plaintiffs' COPPA claim is governed exclusively by COPPA itself, and that Congress intended that the Act be enforced in the federal courts.  *Id*. at 7-8.  Discord reasons that the language and requirements of COPPA, such as its definition of "operator," and what constitutes "actual knowledge" that users are younger than thirteen, are already being litigated in federal courts, and that the interest in the consistent interpretation and enforcement of COPPA weighs in favor of removal.  *Id*. at 13.  Discord also contends that any remedies afforded under COPPA have national implications because Discord has a user global base, and the potential scope of relief awarded underscores the propriety of proceeding in a federal forum.  *Id.*

---

[6]  Defendant asserts in its opposition brief that Factors 1 and 2 are uncontested.  Br. in Opp., D.E. 26, at 6.  Plaintiffs do not address these issues in the Complaint, moving brief, or reply brief. Accordingly, for purposes of this Report and Recommendation, the Undersigned assumes, without deciding, that these factors are not in dispute.

The substantiality prong of *Grable* sets a high threshold that has been satisfied only in rare and exceptional cases.[7] "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *See Gunn*, 568 U.S. at 260 (emphasis in original). The substantiality analysis under *Grable* focuses instead on the significance of the issue to the federal system as a whole. *Id.* at 264-65. Courts have been hesitant to conclude that the mere existence of a federal issue is sufficient to establish a substantial federal question to justify federal question jurisdiction. *Id.* (finding that although the resolution of the plaintiff's claim required the state court to interpret federal law, that did not implicate a significant federal interest that would compel federal jurisdiction). This reluctance arises because the application of federal standards to a particular set of facts does not, by itself, implicate a substantial federal question. *See Burrell*, 918 F.3d at 385. Similarly, the presence of a novel issue of federal law, or the interest in consistent interpretation of federal statutes, is insufficient on its own to render a federal question substantial. *See Merrell Dow*, 478 U.S. at 817. Determining whether a federal question is substantial turns not on whether the federal issue is important to the litigants in a particular case, but instead on the federal issue's significance to the federal system as a whole. *See Gunn*, 568 U.S. at 264-65.

Here, the federal interests implicated by Plaintiffs' state-law claim fall short of the strict *Grable* substantiality standard and do not confer federal jurisdiction under 28 U.S.C. § 1331. In

---

[7] Exceptional cases include actions brought against the Internal Revenue Service that directly implicate the federal government's interest in securing a federal forum to defend its own administrative conduct, or where the constitutional validity of a federal statute is directly at issue. *See Grable*, 545 U.S. at 315.

Count IV, Plaintiffs rely on the borrowing provision[8] of the NJCFA to allege that Discord failed to meet the standards set out in COPPA. By itself, Count IV's borrowing of COPPA does not present a substantial federal question. *See Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 455-56 (D.N.J. 2007) ("That a court may be called upon to evaluate the offending conduct in light of what federal laws and regulations require does not federalize the claims for violation of the [CFA]."). Resolution of Plaintiffs' claims will be fact-specific, and are not likely to turn on pure questions of law. In particular, resolution of Count IV will involve assessment of the Discord platform itself, whether Discord collects personal information from children under thirteen years of age, whether Discord knows it is collecting that personal information, whether Discord is directed at children, and whether Discord obtained parental consent or instead relied on a ban of children under thirteen years of age. *See Burrell*, 918 F.3d at 385.

Additionally, Discord has not adequately demonstrated that Count IV implicates the federal system in a manner that warrants the exercise of federal jurisdiction. For example, Plaintiffs neither challenge the constitutionality of COPPA, nor argue that federal standards exceed their statutory authority. Instead, Count IV alleges that that Discord violated the NJCFA by failing to adhere to COPPA. Therefore, Plaintiffs rely on COPPA, and clearly do not challenge COPPA or question its applicability. *See Hirschbach*, 496 F. Supp. 2d at 455-56 ("That a court may be called upon to evaluate the offending conduct in light of what federal laws and regulations require does not federalize the claims for violation of the [CFA]."). As such, federal law is not dispositive of the issues in this case so as to transform a state action into a federal one. At bottom, Count IV remains squarely a state-law claim.

---

[8] The NJCFA's borrowing provision provides that: "[i]n an action brought by the Attorney General, any commercial practice that violates State or federal law is conclusively presumed to be an unlawful practice under [N.J.S.A. 56:8-2]." N.J.S.A. 56:8-4(b).

In *Hirschbach*, the plaintiff filed a consumer fraud class action alleging violations of the NJCFA. 496 F. Supp. 2d at 453. The plaintiff claimed that the defendant deceptively advertised interest rate changes in the automatic renewal of the defendant's certificates of deposit. *Id.* at 454. The defendant removed the case, and asserted that the deceptive-marketing assertion underlying the NJCFA claim required application and interpretation of the Truth in Savings Act ("TISA"), 12 U.S.C. § 4301 *et seq. Id.* The defendant argued that because the NJCFA claim rested on interpretation of TISA, it posed a substantial federal question. *Id.* The court disagreed and remanded the action. *Id.* at 455. The court reasoned that regardless of whether the NJCFA claim explicitly referenced TISA, "[a] state law cause of action does not give rise to a substantial and disputed question of federal law simply because it is predicated on conduct regulated by federal law." *Id.* at 455. The court stated that even if the alleged NJCFA violation required application of federal law to evaluate the offending conduct, state law (*i.e.*, the NJCFA) still provided the basis for the claim plead in the complaint. *Id.* Because the defendant's core duties at issue were defined by the NJCFA, the mere overlap with federal regulations did not transform the state law claim into a federal one. *Id.*

Other courts have reached a similar conclusion. For example, in *Nevada v. Bank of America*, the State of Nevada brought claims against Bank of America ("BOA") for violations of the Nevada Deceptive Trade Practices Act ("DTPA"), Nev. Rev. Stat. §§ 598.0903 *et seq.*, as well as a prior consent judgment. 672 F.3d 661 (9th Cir. 2012). Nevada alleged that BOA had deceived Nevada consumers concerning BOA's mortgage-modification and foreclosure processes. Much like Count IV in this matter, the complaint in *Nevada* relied on a borrowing provision under the DTPA to claim that BOA, by violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, in turn violated the DTPA. *Id.* at 674-75. The complaint also

alleged that BOA violated the DTPA by making material misrepresentations about the Home

Affordable Mortgage Program ("HAMP"), 12 U.S.C. § 5219a, a program whereby the federal

government, through Fannie Mae, incentivized lenders to modify residential mortgages. *Id.* at

672, 674.

BOA contended that federal jurisdiction existed, *inter alia*,[9] because resolution of the

DTPA claims would require interpretation and application of both HAMP and the FDCPA.

However, the Ninth Circuit concluded that the complaint's reliance on HAMP and the FDCPA

did not raise a substantial issue of federal law. *Id.* at 675.  The Ninth Circuit also rejected BOA's

argument that the DTPA claims posed substantial questions about the applicability of the

FDCPA to mortgage servicers. *Id.*  Relying on *Merrell Dow*, the Ninth Circuit reasoned that the

DTPA claims' reliance on the FDCPA was not sufficient to confer federal question over state-

law claims, even if the question of the FDCPA's applicability was a novel issue. *Id.*  ("Even

where a state law claim does necessarily turn on a substantial and disputed question of federal

law, removal is subject to a 'possible veto' where exercising federal jurisdiction is not

'consistent with congressional judgment about the sound division of labor between state and

federal courts governing the application of § 1331'").  The Ninth Circuit further reasoned

concluded that a finding of federal jurisdiction would disturb the careful balance of federal-state

judicial responsibilities, because the DTPA claims sounded in state law, and the Nevada

Attorney General filed them in state court as a *parens patriae* action. *Id.* at 676.  Accordingly,

the court noted that "[e]xercising federal question jurisdiction over any state law claim that

---

[9]  BOA also asserted that the federal court had jurisdiction under the class action and mass action provisions of 28 U.S.C. § 1332(d).  The Ninth Circuit rejected both of these bases, after finding that Nevada's *parens patriae* complaint was an enforcement action by the Nevada Attorney General that did not quality for removal under § 1332(d).  *Id.* at 667.

references a federal consumer protection statute would 'herald[] a potentially enormous shift of traditionally state cases into federal courts.'" *Id.* (quoting *Grable*, 545 U.S. at 319).  In this case, the New Jersey Attorney General originally filed the Complaint in state court, to enforce the state statutory law.  That Count IV borrows COPPA to plead the NJCFA violation, and therefore might entail application of COPPA, does not raise a sufficiently substantial federal question to exercise jurisdiction under *Grable*.  Moreover, for the reasons explained below, the Court concludes that even if Discord satisfied its substantiality burden under *Grable*, a finding of federal jurisdiction in this case would unduly disturb the balance of federal-state judicial responsibilities.

Although *Burrell,* 918 F.3d 372, analyzed whether a federal defense preempted state-law claims, whereas the issue here is Count IV's borrowing of COPPA to plead a NJCFA violation, the Fourth Circuit's analysis is instructive.  That case presented product-liability and tort claims concerning Essure, a female-sterilization device.   Bayer Corporation, the defendant-manufacturer, removed the case on the basis that the Food and Drug Administration regulations for Class III devices such as Essure raised substantial federal questions, including a potential preemption defense for Bayer.  *Id.* at 379.  The Fourth Circuit disagreed.  First, the Fourth Circuit concluded that Bayer failed to establish that the claims necessarily raised federal questions.  *Id.* at 381.  The court reasoned that the plaintiff's claims raised solely state law claims, and the possibility of a preemption defense by Bayer "'is inadequate to confer federal jurisdiction.'"  *Id.* at 382 (citation omitted).

The Fourth Circuit also found that Bayer failed to establish the substantiality prong of *Grable*.  *Id.* at 384.  The court noted that unlike *Merrell Dow*, which presented state-law claims and for which the Food, Drug, and Cosmetic Act did not confer a federal private right of action,

*Grable* involved claims that uniquely raised issues requiring construction of federal tax law, and therefore warranted federal jurisdiction. *Id.* The Fourth Circuit relied on that distinction to conclude that the substantiality prong of *Grable* requires a federal issue to carry broader significance to the federal system, not just relevance to the parties. *Id.* at 385. Even then, however, the Fourth Circuit cautioned that "there is a high bar for treating a federal issue as sufficiently 'substantial' under the third prong of the § 1331 analysis[,]" and requires "a federal question regarding the constitutionality or construction of a federal statute . . . the resolution of which 'would be controlling in numerous other cases.'" *Id.* (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)).

Discord argues that *Burrell* is distinguishable because in this case, the State of New Jersey seeks forward-looking relief—*i.e.*, an injunction--in addition to damages. Discord also contends that *Burrell* is distinguishable due to the potential nationwide impact of the State of New Jersey's allegations. But Supreme Court precedent instructs that neither of those arguments, even if true, satisfies the substantiality prong. The Supreme Court's decision in *Gunn* makes clear that the focus of the substantiality analysis is not on the relief sought, but whether the federal issue meaningfully affects the federal system. *Gunn,* 568 U.S. at 263. Even assuming Count IV raises questions of federal law by invoking COPPA, COPPA is merely a benchmark for the NJCFA claim. And to the extent Discord contends that application of COPPA in this case may have implications for how other courts interpret and apply COPPA, the Court in both *Merrell Dow* and *Gunn* rejected that very argument as a basis for federal jurisdiction. In *Merrell Dow*, the Court noted that an interest in uniformity of federal-law interpretation is insufficient to make the federal question "substantial." *Merrell Dow*, 478 U.S. at 815-16. In *Gunn*, the Court observed that state courts are capable of applying federal law as it arises in the

13

litigation of state-law claims, and that "the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its root in a misunderstanding of patent law." *Gunn*, 568 U.S. at 263. In this case, as in *Gunn*, the result of the state court's application of the federal law will yield a result on the NJCFA claim in Count IV that is limited to the parties. *See also Burrell*, 918 F.3d at 386 (holding that possibility that adjudication of the federal questions presented in the case might establish precedent for other courts' evaluation of the same federal issue was insufficient to establish substantiality for § 1331 jurisdiction).

Discord's reliance on *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 832, 841 (9th Cir. 2004) is misplaced. Br. in Opp., D.E. 26, at 10-11. In *Lockyer*, the State of California brought suit in state court alleging that the defendant wholesale electricity suppliers' practice of double-selling reserve generation capacity, when they had contracted to hold that energy in reserve and had already been paid for their commitment of reserve capacity, violated the California Business and Professions Code ("CBPC"). *Lockyer*, 375 F.3d at 836. But the suppliers' energy practices were regulated by federal law. Specifically, the Federal Power Act ("FPA"), 16 U.S.C. § 791a *et seq*., required the suppliers to comply with federal tariffs that were filed with the Federal Energy Regulatory Commission and that were the "equivalent of a federal regulation." *Id.* at 839 (quoting *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998). As the Ninth Circuit noted, although California purported to be plead its claims under state law, "[t]he state lawsuit turns, entirely, upon the defendant's compliance with a federal regulation." Moreover, the FPA contains a jurisdictional provision that COPPA does not, and which confers exclusive jurisdiction for tariff violations on the federal court:

> The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity

and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

16 U.S.C. § 825p. In this case, by contrast, COPPA does not limit the New Jersey Attorney General from relying on that Act to plead a violation of the NJCFA under N.J.S.A. 56:8-3.1. *See* 15 U.S.C. § 6504. Moreover, the New Jersey Attorney General does not in Count IV rely on the *parens patriae* provision of § 6504(a)(1) to seek relief under COPPA. As noted, Count IV instead borrows COPPA under N.J.S.A. 56:8-4(b) to plead a violation of, and seek relief under, the NJCFA.[10]

---

[10]  Discord's effort to premise federal jurisdiction on COPPA enforcement is unavailing. For example, Discord argues that "the COPPA remedy that Plaintiffs seek has national implications." Br. in Opp., D.E. 26, at 13. However, the NJCFA, not COPPA, dictates the available remedies for Count IV. Probably for that reason, the Complaint seeks relief exclusively under the NJCFA. *See* Complaint, D.E. 1-1, at page 43 (seeking relief under N.J.S.A. 56:8-1 se seq.). Further, as discussed above, the Supreme Court in *Merrell Dow* and *Gunn* rejected the argument that the precedential implications of interpreting federal law implicated in a state-law claim presented a substantial issue of federal law that warranted the exercise of federal jurisdiction. *See supra* page 13 (citing *Merrell Dow*, 478 U.S. at 815-16; *Gunn*, 568 U.S. at 263; *Burrell*, 918 F.3d at 386).

Discord also argues that Congress intended COPPA to be exclusively enforced in federal court by granting the Federal Trade Commission primary authority to enforce the Act. Br. in Opp. D.E. 26, at 4, 7. Discord characterizes Plaintiffs' reliance on the Act to plead a violation of the NJCFA as an end-run around the FTC's enforcement authority. *Id.* That argument misapprehends the nature of Count IV. Plaintiffs bring Count IV under the NJCFA's borrowing provision, and seek remedies under the NJCFA. Further, COPPA contains a preemption clause that limits only those state laws that are "inconsistent" with its provisions. COPPA does not prohibit states from enforcing their own laws that incorporate or "borrow" COPPA's standards. 15 U.S.C. § 6502(d). Courts have recognized that Congress anticipated state involvement in the enforcement of COPPA, provided that such actions align with state law. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 292 (3d Cir. 2016); *see also Jones v. Google LLC*, 73 F.4th 636, 643 (9th Cir. 2023) (concluding that there is no "clear congressional intent to create an exclusive remedial scheme for enforcement of COPPA requirements"). COPPA allows states to adopt parallel or overlapping standards, such as through the NJCFA, without requiring that enforcement take place in federal court. *Id.*

For those reasons, Discord has not met its burden to establish that Plaintiffs' COPPA claim raises a substantial federal question sufficient to confer jurisdiction in this Court. Although Discord's failure to satisfy the "substantial" prong of the *Grable* test itself warrants remand, for the sake of completeness, the Court will consider whether the exercise of federal jurisdiction over Count IV would upset the federal-state balance of judicial responsibilities.

      **2.**    **Discord Has Failed to Meet its Burden to Establish that the Exercise of Federal Jurisdiction Would Not Disrupt the Balance Between Federal and State Judicial Responsibilities.**

The final factor under *Grable* requires the Court to consider whether the exercise of federal jurisdiction in this matter would disturb the balance between federal and state judicial responsibilities. *Grable* instructs that even when a state-law claim presents a substantial federal issue, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313–14. Where exercising jurisdiction would disrupt that balance, removal is improper. *Id.*

The exercise of federal jurisdiction over a state claim, such as the NJCFA, even if that claim incorporates federal standards like COPPA, is inappropriate where Congress has not provided a private federal cause of action, and thereby provided no indication that Congress intended to shift such disputes to federal court. *See Merrell Dow*, 478 U.S. at 814; *see also* 15 U.S.C. §§ 6501 *et seq* (providing that COPPA does not contain a private right of action). Finding that federal jurisdiction is appropriate here would disrupt the State of New Jersey's strong "sovereign interest" in enforcing its state laws in the courts of its own state. *People v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 276 (S.D.N.Y. 2024).

When a state has a strong interest in adjudicating its own laws, potentially allowing for federal interpretation of those laws would cause an "enormous shift" of traditionally state cases being litigated in the federal system. *Grable*, 545 U.S. at 319. That result would allow federal courts to hear cases that have little impact on the federal system itself, potentially leading to precedent that conflicts with the legislative intent of individual states. *Id.* Defendant's argument that Congress intended for state-enforcement actions under COPPA to proceed in federal court is misplaced. Nothing in COPPA compels a state borrowing the Act to plead a violation of its own state statute to bring that action exclusively in federal court. *See* 15 U.S.C. §§ 6501-6506. Allowing an increase in federal litigation over state-law claims would contradict Congress's intent that COPPA not provide for a private federal right of action. *See Merrell Dow*, 478 U.S. at 814 (concluding that "given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element . . . is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system"); s*ee also* 15 U.S.C. §§ 6501, *et seq*. (granting enforcement authority to the FTC and to state Attorney Generals in *parens patriae* litigation, but providing no private right of action). Therefore, the legislative intent of COPPA supports state autonomy. *Merrell Dow*, 478 U.S. at 812.

This understanding of COPPA's limited preemption and the permissibility of parallel state enforcement actions underscores a broader principle. Federal jurisdiction should not significantly displace a state's authority to enforce its own laws in its own courts. Restraint is warranted in the context of removal, in light of "the sovereignty concerns raised by asserting federal jurisdiction over cases brought by states in their own courts." *W. Virginia ex rel. McGraw v. Bristol-Myers Squibb Co.*, No. 13-1603, 2014 WL 793569, at *4 (D.N.J. Feb. 26,

2014).  A sovereign's protection from suit in federal court is rooted in "our constitutional structure and serves the important function of preserving the dignity to which states are entitled 'as residuary sovereigns and joint participants in the governance of the Nation.'"  *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011) (quoting *Alden v. Maine*, 527 U.S. 706, 713–14, 748–49 (1999)).  Accordingly, "a federal court should be most reluctant to compel [] removal" where, as here, a state has "voluntarily entered into its own courts to enforce its laws."  *CVS Pharmacy Inc.*, 646 F.3d at 178.  New Jersey has a compelling interest in ensuring uniform enforcement of the NJCFA through consistent application and interpretation by its own courts, without the risk that invoking its borrowing statute could trigger removal whenever federal standards are implicated alongside state ones.  New Jersey's "strong sovereign interest in enforcing its state laws … in the courts of its own state" weighs heavily in favor of remand.  *Bank of Am.*, 672 F.3d at 676.

Discord fails to confront the substantial body of case law rejecting federal jurisdiction where asserting such jurisdiction would upset the balance between federal and state authority.  *See, e.g., Bristol Myers Squibb Co.*, 2014 WL 793569, at *9 (stating that while the federal statute was potentially implicated by the plaintiff's claim, "that in and of itself is not substantial under [*Grable*] to support federal question jurisdiction"); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-82312, 2021 WL 732725, at *1, *5 (S.D. Fla. Feb. 25, 2021) (holding that claims related to federally-regulated products "do not raise substantial issues of federal law that would impact the federal system as a whole[,]" as the case was "fact specific"); *Alaska v. Merck & Co.*, No. 06-18, 2015 WL 507011, at *4 (D. Alaska Feb. 6, 2015) (finding that, in a case brought by the State of Alaska, the federal court could "not entertain the claims without disturbing the congressionally-approved balance of state and federal judicial responsibilities").

Discord's contention that Plaintiffs are attempting to impose special jurisdictional standards for state enforcement actions is unpersuasive. Br. in Opp., D.E. 26, at 14. Discord argues that federal courts routinely exercise jurisdiction over state enforcement of state laws when a federal question is properly raised. *Id*. But the Court's substantiality analysis, above, disposes of that argument. The commission of a COPPA violation is not an "essential element" of the NJCFA cause of action pled in the Complaint. *Hirschbach*, 496 F. Supp. 2d at 457. And although COPPA expressly preempts only state laws that are "inconsistent" with its provisions, it does not preempt consistent state laws or prevent state-level enforcement actions. Section 6502(d) provides that no "State or local government may impose any liability … inconsistent[ly] with the treatment of those activities or actions under this section." *Id*. In short, COPPA neither limits a state's right to enact and enforce laws that are consistent with, or incorporate COPPA standards, nor does it prevent a state from using its own laws to enforce compliance. *See Jones*, 73 F.4th at 644 (finding that COPPA's preemption clause does not bar parallel state-law claims that mirror COPPA's requirements); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 292 (acknowledging that Congress expected states to play a role in protecting children's online privacy under their own laws). Although Discord correctly notes that there is no carveout in *Grable* for state enforcement actions, that argument is moot because COPPA's preemption clause is narrow. Br. in Opp., D.E. 26, at 12. Thus, because Congress did not expressly require that these actions proceed exclusively in federal court, no such intent can be presumed. *Merrell Dow*, 478 U.S. at 809.

Plaintiffs' COPPA claim does not raise a substantial federal question that is capable of resolution in federal court without disrupting the federal-state balance charted by Congress. Accordingly, Discord has not satisfied either the substantiality factor or the federal-state balance

factor of the *Grable* analysis. Therefore, the Undersigned respectfully recommends that this matter should be remanded to the Superior Court of New Jersey, Chancery Division, Essex County.

## IV.    ATTORNEY'S FEES

Next, the Undersigned considers Plaintiffs' application for attorney's fees. An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Fees are appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Courts maintain broad discretion to award or deny fees, and may grant fee applications regardless of whether removal was in bad faith. *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 471 (D.N.J. 2012). However, "[t]he Supreme Court counsels district courts to only award attorney's fees in 'unusual circumstances' where the 'removing party lacked an objectively reasonable basis for seeking removal.'" *Curley v. Mercury Ins. Servs., LLC*, No. 21-12259, 2022 WL 445633, at *6 (D.N.J. Feb. 10, 2022) (quoting *Martin*, 546 U.S. at 141).

The Court recommends rejecting the Plaintiffs' request for three reasons. First, Plaintiffs' moving brief makes only a perfunctory reference to fees in its "Conclusion" paragraph. *See* Memo. in Supp., D.E. 19-2, at 13. The moving papers provide no caselaw, rationale, or substantive basis for the request. In fact, the entire discussion of the request spans a single sentence. Although the reply brief makes something of an effort, that Plaintiffs reserved their explanation for its reply brief alone is, itself, sufficient reason to deny the request. *See Migdal v. Portfolio Recovery Assocs., LLC,* No. 16-4750, 2017 WL 3086223, at *2 (D.N.J. July 19, 2017) (refusing to consider argument raised in reply brief because "Rule 7 of the Federal

Rules of Civil Procedure dictates that the Court cannot consider this argument as it exceeds the scope of the original Motion and Plaintiff's Opposition."); *Dana Transport v. Ableco Finance LLC*, No. 04-2781, 2005 WL 2000152, at *6 (D.N.J. Aug. 17, 2005) (refusing to consider argument for dismissal first raised in reply brief and finding that "[t]he purpose of the reply brief is to respond to the opposition brief or explain a position that the respondent has refuted . . . . Because the local rules do not permit sur-reply briefs, the non-moving party cannot respond to newly minted arguments contained in reply briefs.").

Second, the Court cannot find that Discord lacked an objectively reasonable basis to oppose the motion.  Although Discord did not carry its burden of establishing federal question jurisdiction, its arguments were substantial and clearly were rooted in caselaw applying the *Grable* factors.

Third, as Discord notes, Plaintiffs provided no specific amount of fees requested, nor information concerning those fees.  Br. in Opp., D.E. 26, at 15.  As the Court held in *Platkin v. Exxon Mobil Corp.*, that deficiency itself is a basis to deny the request.  No. 22-6733, 2023 WL 4086353, at *4 (D.N.J. June 20, 2023) (quoting *Wells Fargo Bank, N.A. v. Mastoris*, No. 13-5008, 2013 WL 6154531, at *6 (D.N.J. Nov. 22, 2013)).  Therefore, the District Court should exercise its discretion to decline to award fees.

## V.    CONCLUSION

For the reasons stated above, the Undersigned respectfully recommends that the District Court grant Plaintiffs' motion to remand, D.E. 19, and remand this matter to the Superior Court of New Jersey, Chancery Division, Essex County.  The Undersigned also recommends that the District Court deny Plaintiffs' request for attorney's fees.

The parties are reminded that they have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 7.1(c)(2).

**s/Michael A. Hammer**
**UNITED STATES MAGISTRATE JUDGE**

**Dated:**        **September 10, 2025**